No. 5856.

DAVIDSON B. PENN vs. CITIZENS' BANK OF LOUISIANA.

| 32 | 195 |
|---|---|
| 45 | 855 |
| 32 | 195 |
| 47 | 1469 |
| 32 | 195 |
| 48 | 616 |

A lessee is not in the strict sense of the word a third possessor, nor is his right to claim for improvements that of a third possessor proper.

Where property was leased subject to a mortgage the fact that a mortgage creditor exercises his legal right of *foreclosure* does not render him liable to the tenant in damages.

A fair price is the measure of the lessor's liability to the lessee for improvements put on the leased premises by the lessee which the lessor elects to keep.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins, J.*

*Henry C. Miller* for plaintiff and appellant.

*Armand Pitot & Son* for defendants and appellees.

Henry C. Miller, for plaintiff and appellant, contended:

The plaintiff is a third person, who expended his money in making

valuable improvements to the plantation on which the bank had a
mortgage previously granted by the owner of the property. The
plaintiff formed a business connection with the owner and mort-
gagee, by which he was to furnish the necessary means for the
production of the crop, and was to have the use of the plantation
for a term of years, on certain conditions. The bank has kept the
improvements, in foreclosing its mortgage, and actually denied the
benefit of them ; hence its liability to pay their value to plaintiff.
C. C. arts. 508, 3453 ; 23 An. 141 ; 26 An. 587, 366 ; 16 La. 414 ; 22 An.
387.

The principles established by the authorities cited are, that no one can
enrich himself at the expense of another, and that even a third
possessor in bad faith is entitled, upon eviction, to the price of his
improvements, when they have added to the value of the property.

A. Pitot & Son, for defendants and appellees, contended :

The plaintiff is a commission merchant, who made advances to the
owner of the plantation for the purpose of raising crops upon it.
The very words of the contract under which the advances were
made show it clearly. The expenses incurred by him were neces-
sary for the cultivation of the plantation, and might be secured and
re-imbursed by the crops ; but he has no right of action for them
against defendant. The improvements made upon the property
became immovable by destination, and part of the realty, and de-
fendant's mortgage attached to them. C. C. art. 468.

The opinion of the court was delivered by

MARR, J. Pierre S. Sanchez was indebted to the Citizens' Bank ;
and the debt was secured by mortgage, granted in 1858. Finding him-
self unable to pay this debt, he made terms with the bank and obtained
an extension. He gave his three promissory notes, for equal amounts,
payable 31st January, 1869, 1870, 1871, respectively, aggregating $16,347,
the amount due 31st January, 1868 ; and to secure the payment he
granted a mortgage, in favor of the bank, on the 23d March, 1868, on the
same property, a sugar plantation, situate then in the parish of St.
Martin, now in the parish of Iberia.

In September, 1869, plaintiff entered into a contract of partnership
with Sanchez for the cultivation of this plantation for a term beginning
first of October, 1869, and ending first of January, 1874.

By the terms of this contract Sanchez furnished the plantation with
the buildings, thirty-one arpents of cane, 56 arpents of corn, then
standing on the place, some cattle, and utensils.

Plaintiff paid Sanchez $3000 in cash, and Sanchez obligated him-

self to maintain plaintiff in the peaceable possessi·n and enjoyment of the premises during the whole term of the partnership.

Plaintiff was to have the entire control and management of the plantation, and of all business connected with it; to furnish all mules, teams, wagons, and farming implements necessary for raising the crops; to furnish provisions, and advance for the payment of the wages of the laborers; and to provide all the means necessary for working and carrying on the plantation. For all amounts disbursed by him he was to charge the usual interest and commissions; and he was to receive and sell all the crops, charging the usual commission on sales.

If he should deem it necessary to erect any new buildings for the use of the plantation, during the continuance of the partnership, the cost was to be carried to the account of Sanchez, and be borne by him; and Sanchez was not to contract any debt for account of the partnership.

After deducting the expenses of working the plantation the residue of the proceeds of the crop of each year was to be divided equally between plaintiff and Sanchez.

The mules, cattle, and implements purchased during the partnership were to be charged to the account of the crops. Such as might remain at the termination of the partnership were to be divided in kind, or taken by one or the other of the partners at valuation, or sold at public auction, as they might agree.

The property was in a very dilapidated condition; and plaintiff spent large sums in repairs and in fitting the plantation for cultivation. He put up four double cabins; built plantation bridges; repaired the machinery and kettles; furnished a new boiler; dug ditches and a canal; and opened a pond to supply water for the sugar-mill.

In January, 1871, the Citizens' Bank, under executory process on the mortgage in its favor, seized, and subsequently sold the plantation, and became the purchaser at $10,000 cash, the appraised value being $13,000.

Before the sale plaintiff obtained permission of the bank to remove the mules, implements, and utensils purchased by him, and used on the plantation; and there was a separate appraisement of the seed-cane in the field in mats.

Shortly after the sale this suit was brought to recover of the bank. $15,000, of which $3000 were claimed for that amount paid by plaintiff to Sanchez under the contract of partnership, which was defeated by the seizure and sale by the bank; $300 for repairs to the kettles and machinery; $1600 for a new boiler; $1000 for four new cabins; $1500 for ditching, digging a canal, and opening the pond; $3500 for 140 acres

stubble-cane; $3600 for twenty-four acres of plant-cane; and $500 for new bridges.

These sums are claimed on the grounds that the works, improvements, and additions, made and paid for by plaintiff, and the plant and stubble cane on the plantation added $12,000 to its value; that the bank proceeded with the seizure and sale in spite of plaintiff's objections and remonstrances, and finally evicted him from the property; and that the bank had the possession, benefit, and advantages of the works, additions, and improvements, and of the plant and stubble cane, and is therefore liable to plaintiff for the value, $12,000.

The answer of the bank denies liability to plaintiff; denies that the foreclosure of the mortgage was in spite of plaintiff's objections and remonstrances; and avers that it was with plaintiff's full knowledge, and that the sale was made at his suggestion or advice.

It is also alleged in the answer that the seed-cane put up in mats was greatly injured by the cattle in the neighborhood, in consequence of plaintiff's failure to keep up his fences; that it was appraised at $100, the one half of which defendant agreed to pay to plaintiff; and that defendant deposits the amount, $50, in court for the benefit of plaintiff.

Defendant also pleads that all the improvements plaintiff may have made on the place, he made as a partner, for his own benefit, and he reaped the fruit of his labor and expenses by making the crop, which he applied to his own benefit; and that all the improvements he may have made as a partner became immovable by destination, and belong to the place.

The judgment of the district court rejected the demand of plaintiff, and he appealed.

We cannot imagine any possible obligation that existed on the part of the bank not to enforce its mortgage rights; or to grant longer indulgence to Sanchez. In December, 1858, when the original mortgage was given, the debt was $17,600. In January of 1868, it had been reduced to $16,347. The bank extended the payment; and at the end of the three years' delay, nothing had been paid on account. The mortgage, with the pact de non alienando, deprived Sanchez of the power to make any disposition of the property, whether by sale or mortgage, or other contract, to the prejudice of the mortgage held by the bank. By the contract between plaintiff and Sanchez, the mortgaged property was the contribution of Sanchez to the partnership; and the $3000 cash paid by plaintiff must be considered as their estimate of the excess of the contribution by Sanchez over that by plaintiff, which consisted of the obligations and undertaking on his part, as stipulated in the contract. This contract was subordinate to the mortgage rights of the

bank ; and for any prejudice to his rights under that contract, by reason of the exercise of its rights by the bank, plaintiff must look to Sanchez alone.

As to the four cabins, the new buildings put up by plaintiff, the contract specially provided that they were to be paid for by Sanchez. They were to be used by the partnership ; but they were no more the property of the partnership, or of plaintiff, than the plantation was. They were the property of Sanchez, just as the plantation was : they were immovable by destination : they were part of the realty covered by the mortgage ; and plaintiff, by the terms of the contract, must look to Sanchez alone for re-imbursement of the cost.

The stubble-cane was certainly part of the realty. It could not have been severed from the soil in which it was growing without destroying it ; and it was not susceptible of separate ownership.

The testimony of the witnesses, especially that of the sworn appraisers, shows that the value of the seed-cane in mats was $100. The appraisers fix the number of acres of cane in mats at fifteen ; and they say that it was cut from stubble-cane, and was very thin : that if the mats had been in good condition the cane would have been worth $40, we suppose they mean per acre, but the mats being abandoned to the cattle, " they have been damaged to most perfect ruin," the fence having been down even during the grinding season, " the cattle had full power to eat up and damage said mats."

If the cane thus put up for seed had been the property of Sanchez, the owner of the plantation, it would have been immovable by destination. But while it was standing it belonged to the partnership, and when it was severed, cut and put in mats, to be planted for the benefit of the partnership, it continued to be the property of the partnership. The seizure by the bank terminated the partnership; and all the property of the partnership vested, *in indiviso,* in the individuals composing the partnership, subject to the settlement of the partnership debts. If Sanchez and plaintiff had joined in this suit they might have received the entire value of this seed-cane in mats ; and have subjected it to the payment of the partnership debts ; but plaintiff alone cannot stand in judgment for the partnership, nor can he demand any single thing which belonged to the partnership. The testimony satisfies us that the $50, deposited by the bank, the one half of the appraised value of the seed-cane, is all that plaintiff could have received under the proof in the record, if the half had belonged to him separately ; but we think he had no separate right of action to recover the value either of the whole or of one half, because the whole belonged to the partnership.

The new boiler, the ditches, the canal, the pond, the repairs to the kettles and machinery, the bridges, were all necessary expenses, without

which crops could not have been made and gathered ; and by the terms of the contract these expenses were to be charged to the account of the crop of the year in which they were incurred. ·Plaintiff was to advance all the money, and to provide "all the means necessary for the working and carrying on the plantation," for which he was to charge the usual interest and commissions ; and before any division of the proceeds of the crop of each year, "all the expenses which shall be made in each year on the said plantation for working and carrying on the same, and raising and taking off of the crops," shall first be " deducted and re-imbursed."

In the nature of things, the ditches, the canal, the pond, the bridges in the fields, the repairs to the kettles and machinery, belonged to the owner of the soil, and of the kettles and machinery ; and they were not susceptible of removal or of separate ownership. The partnership was to pay for them, as necessary expenses of the partnership, and to have the use of them while the partnership continued ; but as the contract made no provision for the payment by Sanchez to the partnership or to plaintiff of the cost of these works, the ownership was in Sanchez, *ab initio*, absolutely ; and the partnership lost the precarious right to use them by the seizure and sale of the soil from which they were inseparable.

The new boiler was and is susceptible of separate ownership. It might be taken down and removed from the sugarhouse and from the plantation. It was to have been paid for by the partnership : it was originally movable : it was put upon the plantation for the use of the partnership ; it was the property of the partnership. The relations of the partnership to it are not different from those of a lessee with respect to movables which he puts on the leased premises for his own use and benefit, and which he is at liberty to remove at the termination of the lease.

The mules and other movables paid for by plaintiff, and put on the plantation for the use of the partnership, belonged to the partnership ; and the contract provided that such of them as remained at the termination of the partnership should be divided equally between the partners. Plaintiff removed these effects before the sale, by the permission of the bank ; but he is accountable to the partnership for them, and the partnership is accountable to him for their cost. But that which one may do with the consent of all the parties in interest, he could not enforce, in every case, as a legal right: and one partner, whether the partnership be dissolved or not, cannot sue alone to recover the debts or the property of the partnership.

The boiler belonged to the partnership ; and Sanchez and plaintiff might recover it, or its value, as the property of the partnership ; but

plaintiff suing alone in his own right could not recover it, because it is not his individual property.

There must have been great error in estimating the value of the additions, improvements, repairs, and stubble and seed cane. Some of the witnesses say they added $12,000 to the value of the plantation : and yet the sworn appraisers fixed the value of the entire property at $13,000 ; and it was adjudicated to the bank, at public sale, for $10,000.

The plaintiff made an unfortunate partnership. Sanchez could not comply with his obligation to maintain plaintiff, the administrator of the partnership, in the possession and enjoyment of the premises during the term of the partnership, because of his pre-existing obligations to the bank. The additions, improvements, and repairs would, probably, have sufficed for the cultivation of the plantation and the taking off of the crops, for the entire term ; but the condition of the plantation was such that they were all necessary for the making and taking off of the crop of the first year, which was not sufficient to re-imburse the outlay. There is no proof, however, of the state of the accounts of the partnership nor of the proceeds of the crop.

The bank made no agreement, came under no obligation, to grant indulgence to Sanchez beyond that stipulated in the mortgage of 23d March, 1868. One after another the notes for the installments under the mortgage matured, and were not paid ; and the bank exercised simply its legal rights as mortgagee in seizing and selling the mortgaged property. On the property was the new boiler and the seed-cane in mats, which would have been immovable by destination, and would have been covered by the mortgage if they had been placed there by the mortgagor, the owner of the soil. They belonged to the partnership ; and the right of the partnership to sue for and recover their value at the date of the seizure by the bank, must be reserved. We would remand the case for the purpose of having these values established, if the suit had been brought by the partners ; but as the suit was brought by one of the partners alone, we can only modify the judgment so that it may not be held to conclude plaintiff, one of the partners.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be so amended as to reserve to plaintiff and Pierre Sidney Sanchez the right to sue for and recover the value of the new boiler, and of the seed-cane in mats on the plantation lately cultivated by them in partnership, to be estimated at the date of the seizure of the plantation under executory process, at the suit of the Citizens' Bank against Pierre Sidney Sanchez : that with this modification and reservation the judgment appealed from be affirmed ; and that the Citizens' Bank, appellee, pay the costs of this appeal.

## On Rehearing.

WHITE, J.   We granted a rehearing of this cause because we enter-
tained a doubt as to the correctness of our ruling that the plaintiff was
not entitled to recover that which might be found due.   Upon a re-
examination we have concluded that our opinion first expressed should
under the facts of this case be modified.   The terms of the partnership,
the testimony of Sanchez, his approval of the plaintiff's demand, all, we
now think, will justify the plaintiff in recovering any thing that the
partnership could recover were it the nominal, as it is the virtual, through
the plaintiff by the sanction of Sanchez, actor in this litigation.   As
we granted a rehearing without any intimation of the reason by which
we were impelled, the whole cause has been, both orally and in writing,
re-argued, and we have re-examined it, without modifying our views,
except as above indicated.   The capital fallacy in the argument is the
claim of plaintiff that he, or the partnership, for they are one for the
purposes of this suit, is a third possessor, and entitled to be treated as
such.   The words third possessor have a definite legal signification, and
are not a synonym for the word lessee.   The partnership was a lessee
of the plantation, and entitled only to the rights of a lessee.   What the
lessee could claim, the plaintiff can, and no more.   This court called
attention, in Talley vs. Alexander, 10 A. 628, to the fundamental dis-
tinction between the nature and extent of a lessee's right to claim for
improvements and that of a third possessor.   Considering then the
right of the plaintiff as that of a lessee, we think,

1st.   That the money paid for the lease cannot be recovered from
the defendant, it being in no sense an improvement.   True, it was given
in contemplation of the duration of the lease, but the exercise by the
bank of its right of mortgage was the doing of a legal act which, if it en-
tailed damage on plaintiff, was *quoad* the bank *damnum absque injuria*.

2d.   As to the cabins, that they, as we have previously said, are
controlled by the terms of the lease.

3d.   As to the seed-cane, while we adhere to our original view as to
the facts, we think the plaintiff, under the tender made and the admis-
sion resulting therefrom, entitled to its value ; in other words, to the
fifty dollars deposited and fifty dollars in addition.

4th.   The stubble-cane was in no sense an improvement.

5th.   The pond, ditches, repairs, and bridges, while improvements
in one sense, were not so in the legal meaning of the word.   They were
works done by the lessee for the purposes of the lease.   The right to
recover for them as against the owner is to be measured by the terms
of the lease, which clearly, we think, do not give it.   Now, it will not
meet the difficulty to say that, although if the lease had lasted the

lessee could not at its termination have claimed these items, yet as such was not the case, having been made in view of the continuation of the lease, they can be now recovered, or their value, from the bank. The bank stands in the place of the owner, its foreclosure having been the exercise of a legal right paramount to the lease. As regards the bank, the rights of plaintiff are to be tested as if the full period of the lease had expired. This reasoning answers the erroneous view which the case proceeds on, which is, that when one leases a property which is subject to mortgage, the right is thereby acquired, without the privity of the creditor, of preventing him from enforcing his rights, or claiming damages if he does.

6th. The right which we recognized in the partnership to the boiler, the plaintiff under the opinion we have above expressed can avail himself of. The difficulty lies in the proof on the subject. The rule established by C. C. 2726, where the lessee retains, is the payment of a fair price. The bank, we think, has by its answer and defense elected to keep, but there is nothing in the proof to enable us to fix what was a fair price at the date of the sale. There is proof as to the cost, and estimates as to the enhanced value of the property. We shall therefore be compelled to remand the cause for the ascertainment of the fair price of the boiler on the day of the bank's purchase.

It is therefore ordered that our former decree be set aside. It is now ordered, adjudged, and decreed that the judgment below be amended so as to condemn the defendant to pay the sum of one hundred dollars, with legal interest from judicial demand ; that the right of plaintiff to recover a fair price for the boiler put on the property be and the same is hereby recognized ; that the case be remanded for the sole purpose of fixing the price of the boiler in conformity with the views above expressed ; that in all other respects the judgment below be affirmed, costs of both courts to be borne by the defendant.