STATE TRUST CO. v. DE LA VERGNE REFRIGERATING MACH. CO.

(Circuit Court of Appeals, Fifth Circuit. December 11, 1900.)

No. 951.

1. JUDGMENTS—RES JUDICATA—MATTERS CONCLUDED.

On a petition filed in the federal court in a suit to foreclose a railroad mortgage by a creditor of the defendant to enforce a judgment of a state court establishing his right to a vendor's lien or privilege against certain property of the defendant, the plaintiff cannot relitigate the question of petitioner's status as a vendor, or his right to privilege as such; the judgment of the state court being conclusive upon such questions.

2. LIENS—VENDOR'S PRIVILEGE AS TO MOVABLES UNDER LOUISIANA STATUTE—RECORDING.

Under the statute of Louisiana (Rev. Civ. Code, arts. 3271, 3273, 3274), as construed by the supreme court of the state, a vendor's privilege in respect to a movable which has been attached to realty is not lost as against a mortgagee of the realty by a failure to record the same, but the thing sold remains a movable, and subject to the privilege, so long as it has not lost its identity, and can be separated from the land, tenement, or building to which it has been attached without injury thereto.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

The State Trust Company is the trustee of the first mortgage on all the property of the New Orleans & Western Railroad Company. This mortgage was executed on July 15, 1895, and was duly recorded in the parishes in which the mortgaged property lies. On January 10, 1898, in a suit brought by the State Trust Company, a receiver was appointed of the railroad company's property by the United States circuit court for the Eastern district of Louisiana. In October, 1896, the De La Vergne Refrigerating Machine Company began an action in the civil district court for the parish of Orleans, La., against the railroad company, claiming a vendor's lien for the balance due on two compresses and appurtenances erected by it on the premises of the defendant company, under an original contract with the Delta Construction Company, of New York. This action was pending when the receiver was appointed, and under the terms of the order appointing him and directing him to prosecute and defend all actions against the company he made himself a party to the cause in the state court, and adopted the defendant's answer. In due course judgment was rendered in the civil district court for the De La Vergne Company, which was appealed from by the railroad company and the receiver, and was modified and affirmed by the supreme court. In that case the plaintiff claimed that, as between it and the Delta Construction Company, its contract to construct and erect the two cotton compresses on the railroad company's property in St. Bernard parish, La., was a Louisiana contract, and that it has a vendor's privilege on the property covered by said contract. The defendants the railroad company and the receiver contended that the contracts were New York contracts, and, therefore, that no vendor's privilege could result therefrom. The court held that the contracts were Louisiana contracts, and hence carried a vendor's privilege, and adjudged such privilege against the defendants. To this suit neither the trustee of the mortgage nor any of the mortgage creditors were parties. There was no issue in that case as to rank of the alleged privilege, nor as to whether it had any existence as against the mortgagee.

After the judgment of the supreme court of Louisiana became final, the De La Vergne Company filed its petition of intervention in the present case, making the trustee of the mortgage the complainant in said cause, and the receiver party defendant, and asking leave to execute its judgment by separate seizure, sale, and removal by the purchaser, if necessary, from the premises, of the two presses and appurtenances under the alleged vendor's

lien adjudged in its favor. The defense made by the receiver is not in issue here, and all reference to it is omitted. The trustee answered this intervention as follows:

"That it denies all and singular the allegations in the plaintiff's petition contained, and avers that the true facts with reference to the subject-matter of said petition are as follows: That the Delta Construction Company, of New York, entered into a contract with the New Orleans & Western Railroad Company to construct its railroad and various buildings and appurtenances upon the property of said New Orleans & Western Railroad Company situated in the parish of St. Bernard, in the state of Louisiana, and that among the appurtenances contained in the said construction contract were two cotton compresses. That the Delta Construction Company sublet the contract to construct and complete the said presses and their appurtenances to the De La Vergne Refrigerating Machine Company. That in due form of law the mortgages represented by petitioner were placed upon all the property of the New Orleans & Western Railroad Company, and duly and properly recorded in the mortgage office of the parish of St. Bernard, and in other parishes through which the line of railroad aforesaid runs. That said construction contract of the Delta Construction Company was never recorded in the mortgage office of the parish of St. Bernard, nor was the said contract of the De La Vergne Refrigerating Machine Company recorded in the mortgage office for the parish of St. Bernard, or, if it was so recorded, it was not recorded within the time provided by articles 3272 and 3274 of the Civil Code of the state of Louisiana, and no lien of any sort or kind resulted in favor of the De La Vergne Refrigerating Machine Company against the holders of the said mortgages. That under the settled jurisprudence of this court no equitable lien existed in favor of a construction contract against mortgages upon railroad property, and that the plaintiff has no claim whatever against this appearer except as an ordinary creditor of the New Orleans & Western Railroad Company. That this appearer and none of the mortgage creditors aforesaid were parties to the suit in the state court, and none of them are bound by any judgment or decree rendered by said court, and that nothing in the judgment of the said court can be construed as ranking or undertaking to rank the privileges and claims against the New Orleans & Western Railroad Company, and no court has authority or power to tank [take] such privileges except this honorable court. Wherefore this defendant prays that the petition of the De La Vergne Refrigerating Machine Company may be rejected, with costs."

The intervention was referred to a master, who prepared the following draft of a report:

"The undersigned master in chancery, to whom the intervention of the De La Vergne Refrigerating Machine Company was referred by a decree rendered herein on September 2, 1899, directing him to hear and report fully both the facts and the law of said intervention, begs leave to submit his report as follows: This matter came up for hearing before the master on September 7, 1899, and the testimony of Robert W. Robertson, general agent of the intervener, was taken on behalf of the intervener, and the testimony of W. C. Dotterer, receiver of the defendant company, and John W. Mumper, mechanical engineer, on behalf of said defendant company. Various documents noted in the transcript of the testimony were offered in evidence. The master reports and filed herein the testimony of said witnesses and said documents. After being twice fixed for argument, the matter was recently submitted on briefs. Intervener prays for the permission of this honorable court to carry into effect a judgment in its favor and against the New Orleans & Western Railroad Company and its receivers for $32,000, rendered by the civil district court for the parish of Orleans, affirmed by the supreme court of Louisiana, with amendments, and now final; said judgment recognizing as existing in favor of intervener the vendor's lien and privileges on the two cotton compresses known as the 'Bierce Press' and the 'Webb Press,' with the boilers and appurtenances thereto belonging, supplied and erected by the intervener on the premises of said railroad company at Port Chalmette, Louisiana; and decreeing that said privilege be enforced as against said compresses, boilers, and appurtenances. To this petition of intervention William C. Dotterer, the

present receiver of the defendant company, answers, by declaring that, as he was appointed receiver after the occurrences set up in intervener's petition, he can neither admit nor deny its averments, and referring to the records of the civil district court as disclosing the facts. He denies the neglect and misuse of the presses in controversy, and sets up as reasons for preventing intervener from exercising its vendor's lien on said presses that it would seriously injure and inconvenience his company were it deprived at this time of the Bierce press, and that the proposed removal of said press and appurtenances would necessitate the tearing down of the building in which it was constructed. The State Trust Company, plaintiff herein, answers by a general denial, and specifically declares that the contract of intervener was merely a construction contract, from which no lien of any kind resulted, because said contract was not recorded within the period fixed by law. The matter at issue presents two questions for the decision of the court: (1) Does there exist a vendor's lien and privilege on the two presses in favor of intervener? (2) If there be a vendor's lien, is recordation thereof necessary for its enforcement as against the rights of prior mortgage creditors? The facts of the same have been so clearly stated in a decision of the supreme court of Louisiana rendered on May 15, 1899, in the matter entitled 'De La Vergne Refrigerating Mach. Co. v. New Orleans & W. R. Co.,' 26 South. 455, that the master cannot do better than refer the court to said decision for the facts (no evidence having been offered herein to controvert said facts), contenting himself with giving a brief résumé thereof. The intervener contracted with the Delta Construction Company on July 10, 1895, to construct, erect, and deliver to the last-named company on the premises of the defendant company in Louisiana the two presses in question for the price of $80,000, to be paid in installments; the last installment—$32,000—to be paid sixty days after the completion of the presses, and conditioned upon a satisfactory test of their capacity, to be made in Louisiana. The original contracting companies were New York corporations, and the contract was made in that state, to be finally executed in Louisiana. The defendant company herein subsequently took the place of the Delta Construction Company in said contract. The Bierce press was completed within the time limit. By a modification of the original contract, made on December 3, 1895, by written agreement, the time limit for the completion of the Webb press was waived. This was corrected by an oral agreement contemporaneously made that the Webb press should be completed by March 1, 1896. It was not completed at that time. The defendant company finally notified intervener that, unless the press was completed by August 1, 1896, serious damage and injury would result to the company, for which intervener would be held. The press not being completed on August 1, 1896, the defendant company notified intervener of the termination of the contract, and ordered it to remove the parts of the press from its premises. Intervener successfully enjoined defendant from interfering with the work, and finally completed and tendered it to defendant on September 17, 1896. Defendant declined to accept the press, and refused to make the test thereof required by the contract, or to allow it to be made by intervener, or pay the balance of the price due upon the two presses. Thereupon intervener sued defendant in the civil district court, claiming a balance of $32,000 due on the contract for the two presses, alleging said contract to be a Louisiana contract because designed to be carried out in this state, and claiming a vendor's privilege on both presses with their appurtenances. Defendant alleges in its answer that intervener's failure to complete the Webb press in time constituted a violation of the contract authorizing its cancellation, and asks in reconvention for damages resulting from failure to complete the press in time. The lower court gave judgment in favor of intervener for the sum demanded, with recognition of the vendor's privilege on both presses, and rejected defendant's demand in reconvention. The supreme court affirmed this judgment after amending it so as to allow defendant's reconventional demand for damages in the sum of $4,000 with 5 per cent. interest thereon from April 10, 1897. After a careful examination of the authorities and of the evidence, the master finds the decision of the supreme court of Louisiana, above cited, correct both as to the facts and the law. He finds that the contract was a Louisiana contract, that by its nature it imported a vendor's privilege for the unpaid portion of the

price on both presses with their appurtenances, that the vendor's privilege outranks that of the mortgagees, and that the vendor's privilege on a movable requires no registry for its preservation. See Rev. Civ. Code, art. 3227; Baldwin v. Young, 47 La. Ann. 1466, 17 South. 883, and authorities therein cited. The evidence shows that the presses and appurtenances may be removed without damage to the realty or other property of defendant. In conclusion, the master recommends that intervener be granted the relief prayed for."

To this draft of report the complainant filed before the master the following exceptions:

"Now comes the State Trust Company before George C. Preot, special master in chancery, and files the following exceptions to the draft of the master's report on the intervention of the De La Vergne Refrigerating Machine Company: First. That the master has failed to find as a fact that the New Orleans & Western Railroad Company contracted with the Delta Construction Company to erect two cotton presses upon its premises in the parish of St. Bernard as a part of a general contract between said two companies to construct the terminal facilities of the New Orleans & Western Railroad Company, said contract having been set up by the State Trust Company, and offered in evidence before the master. Second. The master fails to find that the Delta Construction Company subcontracted with the De La Vergne Refrigerating Machine Company to construct the two presses mentioned in the contract aforesaid, and fails to find what the terms of the contract between the Delta Construction Company and De La Vergne Refrigerating Machine Company were, although such contract is in writing, and was offered in evidence before the master. Third. The master fails to find that the State Trust Company was no party to the suit in the state court between the New Orleans & Western Railroad Company and the De La Vergne Refrigerating Machine Company. Fourth. The master fails to find that there was no issue in that case as to the character or the rank of the privilege claimed by the De La Vergne Refrigerating Machine Company, the only issue in said case being the question as to whether the contract between the Delta Construction Company and the De La Vergne Refrigerating Company was a Louisiana contract or a New York contract. Fifth. That the master fails to find and hold, as a matter of law, that the character of the privilege, if any, held by the De La Vergne Refrigerating Machine Company, grows, as a matter of law, out of the character of the contract it held with reference to this property, and not out of the judgment of the state court. Sixth. That the master fails to find as a matter of mixed law and fact that the De La Vergne Refrigerating Machine Company was a mere subcontractor in the construction and erection on the premises of the defendant of the presses in question. Seventh. That the master fails to find as a matter of fact that neither the contract between the New Orleans & Western Railroad Company and the Delta Construction Company nor the contract between the Delta Construction Company and the De La Vergne Refrigerating Machine Company were ever recorded in the parish of St. Bernard. Eighth. That the master fails to find as a matter of fact shown by the record that the two presses in question were built upon foundations deep in the soil. Ninth. That the master ought to have found as a matter of law from those facts that these presses were part of the immovable property of the 'fendant company, and were stricken by the mortgage in favor of the State Trust Company recorded upon said property prior to the time when the contracts were made between the Delta Construction Company and the De La Vergne Refrigerating Machine Company, and that such mortgage attached as soon as said presses were constructed and erected upon the mortgaged premises and fastened thereto as aforesaid. Tenth. That the master ought to have found as a matter of law, under the provisions of article 3274 of the Revised Civil Code, that failure to record the contract of the De La Vergne Refrigerating Machine Company gave said company no privilege on said property as against the mortgage of the State Trust Company. Eleventh. That the master erred in holding that article 3274 does not apply to the vendor's privilege, and the authorities quoted by him to maintain his position do not hold any such doctrine. Wherefore the State Trust Company prays that the master may consider these exceptions, and may amend the draft of his report to accord thereto."

On these exceptions the master reported as follows:

"Solicitors for plaintiff, the State Trust Company, have filed exception to said draft report, setting up eleven grounds of exceptions, which said exceptions the master reports and files herewith: First. To the first exception the master answers that he reported the general contract between the New Orleans & Western Railroad Company and the Delta Construction Company as one of the documents offered in evidence in the hearing before him. He now finds specifically that said last-named company agreed in said contract to erect two cotton compresses upon the premises of said railroad company in the parish of St. Bernard. Second. The master reported in detail the contract between the Delta Construction Company and intervener, giving fully the terms and conditions thereof. There is nothing in said contract, which is filed in evidence, to show its connection in any way with the contract between the railroad company and the construction company first above cited. Third. The State Trust Company was not a party to the suit in the state court. This will appear from the pleadings in said suit, all of which have been reported and filed herein by the master in his original report. Fourth. The master found that the character of the privilege was at issue in the state court; that it was decreed to be a vendor's privilege, which, by its nature, outranked other privileges; and he maintains this finding. Fifth and Sixth. These being exceptions as to questions of law, the master submits that his findings in the original report are correct. Seventh. Neither of the contracts was recorded in the parish of St. Bernard. The master found that there was no necessity for recording the contract importing a vendor's privilege. Eighth. The testimony shows that the two presses were built upon foundations deep in the soil. Ninth, Tenth, and Eleventh. These are all exceptions as to questions of law. The master can see no reason for changing his original findings."

The draft of report, the exceptions, and supplemental report were all filed January 3, 1900, whereupon the State Trust Company renewed in detail all of the above-named exceptions, and further averred "that the master's supplemental report fails and neglects to correct the errors complained of by said exceptions in the original report, and as against said supplemental report exceptor renews and re-avers all the exceptions taken before the master to his original report, and particularly excepts to the incomplete and evasive finding contained in the second paragraph of said supplemental report, which purports to answer the second exception taken to the original report, on the ground that the master was asked to find as a fact that the contract between the Delta Construction Company and the De La Vergne Refrigerating Company for the construction of the two presses therein covered was in execution of the contract between the Delta Construction Co. and the New Orleans & Western Railroad Company, and that this request is not answered by saying that there is nothing in the former contract to show its connection with the latter; that connection being the necessary legal inference from all the facts shown in the record."

The court below overruled the complainant's exceptions, confirmed the report, and entered a decree accordingly, from which decree the State Trust Company has appealed, and has assigned as error in this court the following: "(1) That the court erred in not sustaining the exceptions of the appellant to the report of George C. Preot, special master. (2) That the court erred in holding that the State Trust Company was in any wise bound as to the character and rank of the privilege claimed by the De La Vergne Refrigerating Machine Company by the judgment in its favor in the state court. (3) That the court erred in holding that said company had a vendor's privilege on the presses and their appurtenances situated on the premises mortgaged to complainant, when the facts clearly showed that said company was a subcontractor, and not a vendor, and that it had lost its lien as subcontractor by failure to record the same as provided by the statutes of the state of Louisiana. (4) That the court erred in holding that, even if the said company had a vendor's lien on said presses and appurtenances, it was under no obligation to record the same in order to preserve it against the mortgage of complainant."

E. H. Farrar, for appellant.
J. P. Blair, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After reciting the facts as above, the opinion of the court was delivered by PARDEE, Circuit Judge.

The first assignment of error is general, and needs no particular attention.

The second assignment of error is not well taken. It does not appear in the record that the circuit court held that by the judgment of the state court the State Trust Company was in any wise bound as to the character of the privilege claimed by the De La Vergne Refrigerating Machine Company. The holding below was apparently that, as between the parties thereto, the De La Vergne Refrigerating Machine Company and the New Orleans & Western Railroad Company, the judgment was conclusive, and as to the State Trust Company not conclusive, but strongly persuasive.

The third assignment of error raises the question whether, as between the De La Vergne Refrigerating Machine Company and the New Orleans & Western Railroad Company, the former was a subcontractor having only a subcontractor's lien, or was a vendor with a vendor's privilege; and whether any lien that the refrigerating company had as subcontractor was lost for failure to record the same as required by the statutes of Louisiana. The case shows prima facie that originally the De La Vergne Refrigerating Machine Company was a subcontractor, and afterwards became a direct contractor, when the New Orleans & Western Railroad Company intervened in the contract, asserted that it was made for its benefit, and assumed all its obligations. However this may be, by the judgment of the supreme court of the state the relation between the parties as that of vendor and vendee is clearly established, and we are of opinion that the matter is not open for rehearing in this proceeding.

The fourth assignment of error assumes that the De La Vergne Refrigerating Machine Company had a vendor's lien on the presses and appurtenances, and raises the question whether or not, as against the prior mortgage creditor, it was necessary to record the privilege under the laws of the state of Louisiana. Rev. Civ. Code, arts. 3271, 3273, 3274. This assignment presents the really difficult question in the case, and, as it is one of the construction and effect of the registry laws of the state of Louisiana, we must look to the decisions of the supreme court of that state for the proper rule to follow and apply. In Gary v. Burguieres, 12 La. Ann. 227, it is held that an engine and gearing attached to a plantation with the presumed consent of the vendor must be considered a part of the immovable itself, citing Louisiana (Old) Code, arts. 455, 460; and that a privilege of the vendor can only be preserved by registry of the contract under article 3239 (Old) Code, as follows:

"Architects, contractors, masons and other workmen, those who have supplied the owner with materials for the construction or repair of his buildings or other works, those who have contracted, in the manner provided by the police regulations, to make or put in repair the levees, bridges, canals and roads of a proprietor, preserve their privileges, only in so far as they have recorded with the register of mortgages, the act containing the bargains they

have made, or the amount or acknowledgment of what is due to them, in all cases where the amount of the bargain or agreement, or the amount of the account or acknowledgment, exceeds the sum of five hundred dollars."

In Lapene v. McCan, 28 La. Ann. 751, the question as to whether boilers not paid for, but attached to the sugar house with vendor's consent, were a part of the immovable, was not decided, because held to be res adjudicata under a previous judgment; but Judge Wyly, concurring, said:

"I agree with the district judge that 'defendants, having judgment with vendor's privilege on the four boilers, could enforce it by seizing and selling the said boilers separately from the plantation. When they were set up at the sugar house the vendor's privilege was upon them, and I know of no law whereby the purchasers could destroy the privilege by using the property for the purpose it was adapted. I cannot consent that a vendor's privilege on a movable can be lost simply because the purchaser may use it on his planta- tion. If such were the case, the vendor's privilege would furnish but little security in an agricultural district. The law has not declared that the use of a movable by a purchaser shall destroy the vendor's privilege. 'Privileges become extinct: First—By 'the extinction of the thing subject to the privi- lege. Second—By the creditor acquiring the thing subject to it. Third—By the extinction of the debt which gave birth to it. Fourth—By prescription.' Rev. Code, art. 3277. 'As defendants have a privilege upon the boilers as sep- arate things, I see no reason why they may not sell them separately from the plantation. If they remain separate things, so that a privilege may rest upon them, they remain separate for the enforcement of such privilege. They can- not be things, and not things. If they are movables, the vendor's privilege is upon them. If they are part of the plantation—an immovable—there can be no vendor's privilege, because defendants did not sell the plantation. De- fendants had a privilege upon them as movables when they sold them to plaintiffs, and that privilege has been recognized in the judgment sought to be executed."

This quotation is particularly pertinent because of its subsequent approval by the supreme court in Carlin v. Gordy, 32 La. 1285. This last-cited case was a contest between a mortgage creditor and the holder of a subsequent vendor's lien claimed on a sugar mill and machinery. The court held that recording the note given for the price on the day of its date was a sufficient registry; and as to the status of the mill and machinery, movable or immovable, and of the vendor's privilege, said:

"Defendant had a privilege on these movables, perfectly valid, not only as between the parties, but against all third persons. The purchaser subse- quently set up this mill and machinery upon his plantation. They were thereby converted into immovables by destination; but this conversion did not and could not operate to the prejudice of the vendor's privilege existing thereon prior to their attachment to the plantation. * * * The evidence fully establishes that the mill and machinery in this case can be removed without damage to the sugar house, and the case falls fully within the facts and principles of the case of Lapene v. McCan, 28 La. Ann. 749, the doctrine of which case is much more satisfactory to our minds than the contrary doc- trine of Gary v. Burguieres, 12 La. Ann. 227, where we think the court puts too narrow an interpretation upon the expressions of Troplong. The concurring opinion of Justice Wyly in the case of Lapene v. McCan, while perhaps too broad in its general statements, we think is thoroughly correct, so far as it applies to movables, which, though attached to a plantation, are capable of removal without damage to the structures in which they are contained, or with which they are connected. In such case there is no reason why the vendor's privilege which attached to them as movables prior to their being placed on the plantation should not continue in force, and why they should not be sep-

aratcly sold in satisfaction thereof. The privileges resting upon movables are, in some cases, affected by the changes which may take place in the nature or destination of the things. But such changes must be so radical as to create a new species of things, and destroy that species which originally existed; as, to use the illustration of Cujas, when a pine or cypress log is converted into a ship, or when wool is converted into a garment, or when marble is made into a statue. In the case at bar the mill and machinery have suffered no such change by the use which the vendee has made of them. They remain the mill and machinery which were sold, and the privilege subsists in all its force. Had their destination as immovables been effected in such manner as to preclude their detachment without injury to independent rights of ownership in the soil or structures, the privilege might have been subjected to such limitation in its exercise as would prevent the separate sale or removal of the thing subjected to it. But where, as in this case, no such difficulty exists, or, if at all, to an inappreciable extent, we see no reason for imposing any restriction upon the rights of the privileged creditor. The privilege of the vendor is founded on the right of property. Payment of the price is essential to the vesting of an indefeasible title in the vendee. The vendor's right to and securities for the payment of the price have always commended themselves to the favorable consideration of our courts."

In Baldwin v. Young, 47 La. Ann. 1466, 17 South. 883, the contest was between the unpaid vendor in a conditional sale and the mortgage creditor as to the right of the vendor to remove a heating apparatus attached to the realty, and we quote at length as directly bearing on the question, when do movables attached to the realty become a part of the immovable as against the unpaid demand of the vendor for the purchase price?

"The principle that movables added to the immovable for its improvement, while inflexibly applied as between the owner and his vendee or mortgagee, is yet subject to well-defined exceptions. The Code itself recognizes the right of the third person to remove or claim compensation for his works or constructions on the immovable of another; yet, if made by the owner, the improvements would undoubtedly be subject to any mortgage by him on the immovable. Civ. Code, arts. 506, 507. So the privilege accorded by law to the vendor of movables still subsists, though the movables are attached by the purchaser to the immovable, and will be enforced against the mortgage creditor. The French commentators state the law by a commonplace illustration: The workman sells the farmer a tub, which he places on his farm for its improvement. The tub thus becomes a part of the immovable. But shall this change deprive the workman of his privilege? The commentators answer in the negative, and affirm, until paid for, the vendor, notwithstanding the change, preserves un droit reél on the article sold. 1 Troplong, Priv. & Hypoth. No. 113; Lapene v. McCan, 28 La. Ann. 749; Hall v. Wyche, 31 La. Ann. 735; Carlin v. Gordy, 32 La. Ann. 1285. The authorities, we think, sustain the right of the unpaid vendor to enforce his privilege on the movable sold, although by the act of the purchaser it has become part of the immovable. The vendor of a movable is apprised by law that without régistry he preserves a privilege on the thing sold. Civ. Code, art. 3227; Const. art. 176. It is difficult to see, in the light of the provision in the constitution, that the privilege can be defeated by the use the purchaser makes of the thing sold. There is a decision in 1857 that the privilege must be recorded to avail if the thing sold has been incorporated with, so as to become part of, the immovable. The decision has no support in the French authorities, nor in the later adjudications of this court; and where they deal with registry at all it is because the constitution in existence required all privileges to be recorded. Gary v. Burguieres, 12 La. Ann. 227; Const. 1868, art. 123. In this case it is not his privilege for the price on which the vendor insists. It is his ownership of the movable he demands. If the law will not allow the mortgage creditor to defeat the privilege on the movable which, unpaid for, happens to be placed in the building subject to the mortgage, it is not easy to appreciate why, on the

same principle, the ownership of the movable should not be equally protected against the mortgage creditor. On what principle can the mortgage be extended beyond the property of the debtor? Civ. Code, art. 3278. Instances are not infrequent of the property of third persons placed by them on the mortgaged property, but it has never been supposed such articles were subject to the mortgage. In this case there is no controversy on the issue of the ownership of the heater. It belongs to the vendor under his conditional sale. It is the case of the property of the third person never subjected to the mortgage, unless it is to be maintained that our Code transforms the property of the vendor, who has never parted with his ownership, into that of the purchaser. Can it be said the law will enforce against the mortgage creditor the privilege of the vendor for the price of the thing sold on the mortgaged premises, but for the benefit of the mortgage creditor will not permit the vendor to remove that property, though no price has ever been paid, and under the conditional sale the vendor is the owner of the property? We find no warrant in our Code for this view of the law. It seems to rest on the protection it is claimed the law gives to the creditor who takes the mortgage on the faith of the public records showing no incumbrance on the property, or who spreads on the records his mortgage; notice to all, it is urged, that no lien can be acquired to the prejudice of the mortgage. There are striking analogies, at least, opposed to this view. The law, notwithstanding the unrecorded mortgage, will enforce against the creditor the claim of the workman for work on the property mortgaged. The owner of the immovable is not permitted to profit by the construction or works of a third person on the immovable. The mortgage creditor must pay for the improvements of the third possessor; and we think it beyond doubt that the mortgage yields to the vendor's privilege on the movable sold and attached to the mortgaged property. Civ. Code, arts. 507, 3268; Penn v. Bank, 32 La. Ann. 195; Bank v. Miller, 44 La. Ann. 199, 10 South. 779; Lapene v. McCan, 28 La. Ann. 749; Carlin v. Gordy, 32 La. Ann. 1285; 1 Troplong, Priv. & Hypoth. No. 113. It seems to us on the same principle the claim of the vendor who remains the owner of the movable placed in the mortgaged premises must be admitted against the mortgage creditor, and in reaching this conclusion we have given the fullest consideration to the argument and authorities cited by plaintiff's counsel."

In Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044, 22 South. 310, Hall v. Hawley, 49 La. Ann. 1046, 22 South. 205, and Association v. Johnston, 51 La. Ann. 470, 25 South. 383, it is again held that the privilege of the unpaid vendor on the movable is not lost because it has been attached to the immovable. In each of these last three cited cases the contest was between the mortgage creditor and the vendor of the movable, but in neither is there any reference to any registry of the vendor's privilege as in any wise affecting the rights of the parties. The opinion of the court in Baldwin v. Young, supra, so far as it overrules and modifies Gary v. Burguieres, supra, is vigorously attacked as obiter, because the case showed that the movables involved were sold under a contract that, until paid for, the vendor should be the owner of the thing sold, and registry vel non was not in question. So far as the necessity of registry was concerned, we think it depended on the determination of an issue as to whether quoad the vendor the movable sold had been so merged in the immovable that the vendor could no longer assert his privilege on the identical thing sold; and, to the extent that this question was involved, we cannot agree that the enlightened views so well expressed by Mr. Justice Miller, delivering the opinion of the court, were obiter; and, so far as anything favorable to appellant here can be claimed, because the sale in Baldwin v. Young, supra, was a conditional sale, we may inquire what substantial difference can

be urged between a so-called conditional sale and an ordinary sale in which the vendor's privilege is preserved, so far as the right to recover the unpaid price is concerned? "The privilege of the vendor is founded on the right of property. The payment of the price is essential to the vesting of an indefeasible title in the vendee." Carlin v. Gordy, supra. Whether the sale be conditional or absolute, retaining the vendor's privilege, the vendor in each case may subject the thing sold to the payment of the unpaid purchase money; and in equity the results in each case are the same. In Louisiana it is well understood that, as against third persons, the vendor's privilege on an immovable must be recorded. Rev. Civ. Code, art. 3274. See Act No. 45 of 1877. In substance, this has been the law since the Code of 1825. The variations have been with regard to the manner and time of registry. It is equally understood in Louisiana that the vendor's privilege on a movable is not lost by failure to record the same. This has been the law since the adoption of the constitution of 1879. The real question considered in the above-cited cases was, when, in favor of third persons and against the vendor, does a movable attached to land, tenement, or building become an immovable, or part thereof, by destination? And we understand the decisions of the supreme court of the state to be uniformly (except in Gary v. Burguieres, supra) to the effect that, so long as the price is unpaid, and the movable has not lost its identity, and can be separated from the land, tenement, or building to which it has been attached without injury to the immovable, as to the vendor it remains a movable, and he may subject the same to his vendor's privilege, the registry of the same being immaterial. This seems to be in accord with the equities of the case as they are regarded in De L'Isle v. Succession of Moss, 34 La. Ann. 166:

"The privilege accorded for the payment of the unpaid price of sale is one of great value, resting on considerations of the plainest equity. It would, indeed, be unjust to place an unpaid vendor on a footing of equality with the other creditors of the purchaser, and permit these to devour his substance; for it is only on the condition that the price of the thing sold has been paid that the purchaser acquires an indefeasible title of ownership to the property, and that his creditors can be paid. * * * It confers rights of a high character, superior to those which flow from a mortgage. * * * It is the price which is protected by the privilege. By the sale the vendor increases the estate of the purchaser. It would be iniquitous to permit the property sold to become the prey of the creditors of the purchaser, without requiring, as a condition precedent, the payment of its cost. * * * The word 'price' signifies the sum stipulated as the equivalent of the things sold, and also every incident taken into consideration for the fixing of the price, put to the debt of the vendee, and agreed to by him."

The decree of the circuit court is affirmed.